**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VETERAN CALL CENTER, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HAMMERMAN & GAINER, INC.,<br><br>Defendant. | Civil Action No.: 15-6257 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Presently before the Court is Defendant Hammerman & Gainer, Inc.'s ("HGI") motion to dismiss Plaintiffs' complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this action to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a). Defendant and Plaintiffs both submitted declarations and exhibits in support of their briefs. *See* Declaration of Larry Oney ("Oney Decl.") (President of HGI, filed in support of HGI's motion); Opposing Declaration of George W. Martin ("Martin Decl.") (Chairman and CEO of Plaintiffs). The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's motion.

## I.    BACKGROUND

Plaintiff Veteran Call Center, LLC ("Veteran Call Center") is a Virginia company with its principal place of business in Piscataway, New Jersey. Compl. ¶ 1. Plaintiff Veteran Contact

Center, Inc. ("Veteran Contact Center") is a New Jersey corporation with its principal place of business in Piscataway, New Jersey. *Id.* ¶ 2. Plaintiffs are "a Certified Service Disabled Veteran Enterprise and Minority Business Enterprise that services commercial customers and Government agencies by employing physically disabled Veterans as call center managers." *Id.* ¶ 7. HGI is a Louisiana corporation with its principal place of business in New Orleans, Louisiana. *Id.* ¶ 3. Defendant "is a risk services and claims management company that provides property and casualty claims administration services nationwide." *Id.* ¶ 9.

"On or about May 8, 2013, HGI entered into a three-year, $68 million contract (the 'Prime Contract') with the State of New Jersey, Department of Treasury, Division of Purchase and Property (the 'State') to administer the State's Superstorm Sandy Housing Incentive Program ('SSHIP'), a $1.6 billion program in which HGI would be responsible for, among other things, development of an intake and application process, eligibility determination, loan closings, disbursing of funds, monitoring and compliance and close out of the program." *Id.* ¶ 11. In order to satisfy its responsibility under the Prime Contract with New Jersey, HGI was required to set up a call center "to receive calls from New Jersey homeowners victimized by Superstorm Sandy in order to assist them with the application process for the Sandy housing programs." *Id.* ¶¶ 13-14. HGI chose to fulfill its call center obligation by subcontracting the call center operations to a third party. *Id.* ¶ 15.

To this end, Mr. Martin of Veteran Call Center was contacted in New Jersey on or about July 2013 by Quadel Consulting Corp ("Quadel") to see if veteran Call Center would be interested in operating a New Jersey call center related to the New Jersey SSHIP program. *See* Martin Decl. ¶¶ 8-10. Quadel has offices located in New Jersey and is a long-time consultant to HGI. *See id.* ¶

2

11 & Ex. 1 (HGI brochure signed by Mr. Oney). In response, Veteran Call Center sent a proposal to Quadel. *See id.* ¶ 12 & Ex. 2. The proposal was prepared in New Jersey and sent from New Jersey to Quadel. *Id.* Subsequently, Mr. Martin met with Quadel representatives in New Jersey. *See id.* ¶¶ 14-16 & Ex. 3 (New Jersey presentation materials).

After the meetings between the Quadel representatives and the Veteran Call Center representatives, Quadel sent a Letter of Authorization ("LOA") to Veteran Call Center so that work in New Jersey could begin immediately, during the pendency of negotiations of a contract. *Id.* ¶¶ 18-21 & Ex. 4. Quadel sent the LOA to Veteran Call Center's New Jersey address. *Id.* at Ex. 4. After signing the LOA, Mr. Martin learned that Veteran Call Center would be entering into a subcontract with HGI not Quadel. *Id.* ¶ 22. Therefore, Mr. Martin meet with and exchanged information with Chip Larkin, HGI Deputy Director working on HGI's New Jersey Sandy project. *Id.* ¶ 23. They met in Mr. Larkin's New Jersey office, and correspondence from Mr. Larkin to Veteran Call Center was sent from a New Jersey business address. *Id.* ¶ 25 & Ex. 7. On August 19, 2013, Mr. Larkin sent a draft of the Subcontract Agreement to Mr. Martin from his renewjerseystronger.org email address. *Id.* ¶ 26 & Ex. 8. Mr. Martin asserts that there were no significant negotiations of the subcontract as it was non-negotiable, but that any discussions that occurred all took place in New Jersey. *Id.* ¶ 27.

On August 23, 2013, Plaintiff Veteran Call Center contracted with Defendant "to operate and manage the [New Jersey] Call Center (the 'Subcontract')." *Id.* ¶ 28; Oney Decl., Ex. A ("Basic Ordering Subcontract Agreement"). Mr. Martin executed the Subcontract on behalf of Veteran Call Center in New Jersey. Martin Decl. ¶ 28. The Subcontract states that it is "between Veteran Call Center LLC with its principal offices at 53 Knightsbridge Road, Suite 201, Piscataway, NJ .

3

. . and Hammerman & Gainer, Inc. . . . ." Oney Decl., Ex. A. The Subcontract contains a "paid when paid" provision requiring payment to the subcontracter "within fifteen (15) days of . . . receipt of payment from the [State] . . . ." Compl. ¶ 40; Oney Decl., Ex. A § 8.5.

Appendix A ("Subcontract General Terms and Conditions") to the Subcontract contains a "Governing Law" provision that provides:

> The validity, enforceability and interpretation of this Agreement shall be determined and governed by the laws of the Louisiana without regard to Louisiana's conflict of laws principles, regardless of the actual state within which services may be performed. Both parties hereby consent to personal jurisdiction and venue in the courts of Orleans Parish, or a federal court located in Louisiana if any Suit is brought under the terms of or relating to this Agreement.

Oney Decl., Ex. A (Subcontract), App'x A, § 38.1. Appendix C to the Subcontract ("Prime Contract Terms Incorporated by Reference.") also contains an "Applicable Law and Jurisdiction" section, which provides:

> This contract and any and all litigation arising therefrom or related thereto shall be governed by the applicable laws, regulations and rules of evidence of the State of New Jersey without reference to conflict of law principles and shall be filed in the appropriate Division of the New Jersey Superior Court.

*Id.*, Ex. A, App'x C, § 5.13. Because of the various applicable governing documents incorporated into the Subcontract, Appendix A to the Subcontract contains an "Order of Precedence" provision that provides:

> 32.1 In the event of a conflict in the terms and conditions of the contract documents, the following order of precedence shall apply:
> 32.1.1 Prime Contract Terms and Conditions between Prime and Client (Appendix C)
> 32.1.2 Basic Ordering Agreement between Prime and Subcontractor
> 32.1.3 Task Orders
> 32.1.4 General Terms and Conditions (Appendix A)
> 32.1.5 Fee Schedule (Appendix E)
> 32.1.6 Other contract documents

4

*Id.*, Ex. A, App'x A, § 32.

"In order to fulfill its obligations under the Subcontract, VCC screened, hired, trained and managed over 85 New Jersey citizens and/or employees, comprised primarily of Disabled Veteran, Veterans, Veteran spouses, and Minorities to operate the Call Center, which was established in VCC's Piscataway office." Compl. ¶ 18.  Payment for these services was remitted to Veteran Call Center's New Jersey bank account.  Martin Decl. ¶ 37 & Ex. 13; Oney Decl. Ex. B.[1]  HGI maintained offices in New Jersey during the relevant period of the Subcontract, both separate from Veteran Call Center as well as maintaining two offices in Veteran Call Center's facility.  Martin Decl. ¶¶ 33-34, 49; *id.* at Ex. 1 (HGI brochure).  During the period of the Subcontract, Veteran Call Center employees had numerous meetings with HGI employees and representatives in New Jersey.  *Id.* ¶¶ 39-42.

"During HGI's performance under the Prime Contract [with New Jersey], a dispute arose between HGI and the State over the amounts HGI was billing the State." Compl. ¶ 20.  HGI acknowledges that "[t]he majority of the unpaid funds were for work performed by HGI's subcontractors, including [Veteran Call Center]." Oney Decl. ¶ 15.  "Notwithstanding the dispute between HGI and the State, and in accordance with the Subcontract, VCC continued to operate the Call Center up through the Prime Contract's expiration." Compl. ¶ 24.  Plaintiffs assert that HGI received an interim payment from New Jersey of $9.5 million in or about December 2013 which

---

[1] Mr. Oney asserts in his declaration that "all of HGI's payments to VCC were remitted to VCC's Philadelphia address." Oney Decl. ¶ 4.  However, the invoices attached to the Oney Declaration clearly indicate that, although the company address on the invoices was Philadelphia, payments were to be made by wire to Veteran Call Center's New Jersey bank account. *See id.*, Ex. B.

5

was to be used to pay HGI's subcontractors. *Id.* ¶ 33. They further assert that "no portion of the $9.5 million 'interim advance payment' was distributed to [Plaintiffs]." *Id.* ¶ 34.

"On or about February 7, 2014, HGI commenced Arbitration proceedings with the American Arbitration Association against the State (the "Arbitration")." *Id.* ¶ 25. "Over one year from the filing the Arbitration, the State and HGI settled their dispute." *Id.* ¶ 28. "As part of their settlement, the State and HGI agreed that the State would pay HGI $7.625 million (the "Settlement Payment") as full and final payment for all invoices and work performed by HGI under the Prime Contract (the "Settlement Agreement")." *Id.* ¶ 29. The Settlement Agreement was executed between HGI and New Jersey on May 7, 2015. Oney Decl., Ex. D. The Settlement Agreement provided that New Jersey would pay the settlement amount to HGI to be held in escrow for a period of time by McCarter & English LLP in a New Jersey bank account. *Id.*, Ex. D, § 1.1 & Ex. A to the Settlement Agreement (Escrow Agreement). The Settlement Agreement identified Veteran Call Center LLC as a subcontractor of HGI with outstanding invoices. *Id.*, Ex. D, §§ 1.2, 1.4. The Settlement Agreement entered into by HGI with New Jersey contained a provision providing that "[a]ny action to enforce this Agreement shall be brought in the State of New Jersey." *Id.*, Ex. D, § 5.0; *see also id.*, Ex. A (Escrow Agreement) § 13 ("Any action arising out of or seeking to enforce rights arising under this Escrow Agreement shall be brought in the courts of the State of New Jersey.").

Between December 2013 and June of 2015, Mr. Martin has numerous conversations and several meetings with HGI representatives regarding the unpaid invoices. Martin Decl. ¶¶ 44-47. Mr. Martin was in New Jersey for all of the conversations, and the meetings relating to the outstanding amounts due (whether some or all) took place in New Jersey. *Id.* ¶¶ 44-45.

6

Mr. Oney asserts that HGI determined to pay the subcontractors pro-rata from the funds received from New Jersey. Oney Decl ¶¶ 13-21. Mr. Oney further asserts that the decision on how to allocate the amounts received from New Jersey "were made by HGI management at HGI's office in New Orleans, Louisiana," and that all communications on this issue originated from HGI's Louisiana offices. *See id.* ¶¶ 13, 22.

Veteran Call Center rejected the amount offered by HGI to settle its outstanding invoices. *Id.* ¶ 25. Thus, Veteran Call Center has not been paid its outstanding invoices even after payment to HGI by New Jersey. *See* Compl. ¶¶ 34, 36, 38. Veteran Call Center also asserts that HGI has not paid a 10% retainage that is due and owing. *Id.* ¶ 39. As a result of the non-payment of amounts they allege are due and owing, Plaintiffs filed suit in this Court against HGI on August 18, 2015, alleging breach of contract among other claims. HGI moved on September 24, 2015 to dismiss the New Jersey Action for improper venue under Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this action to the federal court in Louisiana under 28 U.S.C. § 1404(a).

## II.   LEGAL STANDARD

### A.   Venue

Federal Rule of Civil Procedure 12(b)(3) permits a party to file a motion to dismiss for improper venue in response to a pleading. Fed. R. Civ. P. 12(b)(3). A party moving for dismissal bears the burden of showing that venue does not lie. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir.1982); *see also Great Western Min. & Mineral Co. v. ADR Options, Inc.*, 434 Fed. App'x 83, 86 (3d. Cir. 2011) (citing *Myers*). Under 28 U.S.C. § 1391(b), a civil action may be brought in—

7

(1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In determining where "a substantial part of the events or omissions" occurred, "[t]he test . . . is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (internal quotations omitted); *see also Bockman v. First American Marketing Corp.*, 459 Fed. App'x 157, 161 (3d Cir. 2012) (quoting *Cottman*). The requirement of "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman*, 36 F.3d at 294; *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) (the venue provision is "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial") (emphasis in original). The Third Circuit has further explained that "[i]n assessing whether events or omissions giving rise to the [plaintiffs] claims are substantial, it is necessary to look at the nature of the dispute." *Cottman*, 36 F.3d at 295.    For actions sounding in contract, "the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Frato v. Swing Staging, Inc.*, No. 10-5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011).

### B.     Transfer

Where venue is proper, under certain circumstances, a matter may nonetheless be transferred to another district pursuant to 28 U.S.C. § 1404(a).  *See Salovaara v. Jackson Nat'l. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001).  Transfer to another district from a proper venue may be appropriate "[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . ."  28 U.S.C. § 1404.  However, "[b]efore permitting such a transfer, a district court also must consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Salovaara*, 246 F.3d at 297 n.5 (internal quotations omitted).

Although there is no definitive list of factors that must be examined, the Third Circuit has identified certain private and public factors for courts to consider.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  The "private interest" factors include: (1) plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records.  *See id.*  The "public interest" factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law.  *See id.*  The party moving for transfer bears the burden in demonstrating that a transfer is appropriate, and "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."  *See id.*

Within this framework, a forum selection clause generally is treated as a manifestation of the parties' preferences as to a convenient forum. "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Id.* at 877. Under federal law, in order for a forum selection clause to be enforceable, "the choice of forum must be mandatory rather than permissive." *Union Steel Am. Co. v. M/V Sanko Spruc*e, 14 F. Supp. 2d 682, 687 (D.N.J.1998). "To assess whether a forum selection clause is mandatory or permissible, the court looks to the wording of the agreement and applies ordinary principles of contract interpretation." *Id.* In short, the Court must determine whether the plain language of the contract "unambiguously states the parties' intentions" to make jurisdiction exclusive. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997). In either case, "[n]otwithstanding the exact weight given," a forum selection clause "is a factor considered in § 1404(a) motions." *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, No. 07-273, 2007 WL 4365328, *4 (D.N.J. Dec. 11, 2007). However, even a mandatory forum selection clause will not be dispositive in all cases. *See Jumara*, 55 F.3d at 880; *Cancer Genetics*, 2007 WL 4365328, at *2 (same).

## III.   ANALYSIS

### A.      Venue is Proper in this District

As an initial matter, this Court finds that venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(a)(2). Although Defendant strains to frame the dispute and facts as only tangentially involving New Jersey, it is difficult to imagine a contractual situation more closely tied to New Jersey than presented here. The contract in dispute was negotiated and/or discussed between the parties in New Jersey, it was executed in New Jersey, it expressly states that

10

Veteran Call Center's principal offices are in New Jersey,[2] the purpose of the contract was to provide services in New Jersey to New Jersey residents as a subcontractor to a contract with the state of New Jersey related to Superstorm Sandy. Thus, it was New Jersey state funds that were paid to HGI for services provided by Veteran Call Center for the benefit of New Jersey residents.

Additionally, prior to the alleged breach, Plaintiffs were paid for their services by HGI by wire into their New Jersey bank accounts. During the relevant period of the contract with New Jersey and the subcontract with Veterans Call Center, HGI maintained offices and employees in the state of New Jersey as well as on the New Jersey premises of Veteran Call Center. Discussions and meetings between Veteran Call Center and HGI related to HGI's non-payment of invoices occurred in New Jersey. Furthermore, after HGI and the State of New Jersey settled the dispute related to the Prime contract, the state of New Jersey deposited funds in an escrow account at a New Jersey bank.[3] HGI has acknowledged that the majority of these funds were for unpaid subcontractor invoices related to the New Jersey work. And, HGI signed at least three agreements with the state of New Jersey with mandatory forum selection clauses indicating that any disputes were to be brought in New Jersey courts.[4] Thus, this is not a case where there can be any credible

---

[2] HGI points out that the notice provision of the contract identifies a Philadelphia address. However, as noted herein, the contract plainly identifies the principal place of business for Veteran Call Center as New Jersey.

[3] That HGI may have removed the New Jersey funds from the New Jersey escrow account to a Louisiana account prior to paying the New Jersey subcontractors does not support HGI's position.

[4] HGI's Subcontract Agreement with Veterans Call Center also contained an Ordering Provision in Appendix A that made the provisions of Appendix C take precedence over those in Appendix A, which in this case Plaintiffs argue means that the Subcontract itself was subject to the Prime contract's mandatory forum selection clause.

claim of a defendant being "haled into a remote district having no real relationship to the dispute." *Cottman*, 36 F.3d at 294.

In the face of these facts, HGI's main argument is that it decided from Louisiana how to allocate the funds paid by the State of New Jersey (and deposited in a New Jersey bank account for such payment). In support of this position, HGI argues that "where a party has allegedly failed to make a payment, the locus of the action is where the party failed to take that action rather than where the result is felt." Def.'s Mot. at 13 (quoting *C.O. Truxton, Inc. v. Blue Caribe, Inc.*, No. 14-4231, 2014 WL 6883145 (D.N.J. Dec. 5, 2014) and citing *Cottman*, 36 F.3d at 295, and *CLP Packaging Solutions, Inc. v. Sports Pouch Beverage Co.*, No. 07–1532, 2008 WL 2095774, at *2–4 (D.N.J. May 16, 2008)). None of these cases present factual scenarios analogous to the present one—where all contacts are with the state of New Jersey, except a purported executive decision from Louisiana as to how to allocate the funds in the New Jersey bank account. *See C.O. Truxton*, 2014 WL 6883145, at *5 ("[N]o party has offered evidence suggesting that Defendants traveled to or were in present in New Jersey to negotiate or misrepresent their intentions . . . ."); *CLP Packaging*, 2008 WL 2095774, at *4 (noting that "importantly" Sports Pouch did not maintain offices in New Jersey and that most activity occurred outside of the state); *Cottman*, 36 F.3d at 295 (noting that the contract at issue was executed and performed outside of Pennsylvania). In short, in each of these cases, the non-remittance of payment to the venue at issue was the single contact or one of only a few that related to the venue in question. That is not the case here.

During the relevant period, HGI maintained offices in New Jersey. HGI had meetings with Veteran Call Center in New Jersey to discuss the outstanding invoices. It was New Jersey state funds that were to be used to pay Veteran Call Center, and those funds were deposited by the state

12

into an escrow account in New Jersey.   Additionally, Plaintiffs do not merely argue that funds were not remitted; they dispute the amount due them per the contract, which was executed and performed in New Jersey.  If HGI's argument were to be credited, venue could be avoided in any case where a company with multiple locations claimed that an executive decisionor events at issue are tied to the venue in question.  The Court does not find this position persuasive or supported by the case law.

### B.      Transfer is Not Warranted in this Case

In analyzing the factors to be considered for transfer, the Court first addresses the parties' forum selection clause arguments.  The parties dispute whether the applicable forum selection clause is the clause in § 38.1 of Appendix A to the Subcontract Agreement or § 5.13 of Appendix C to the Subcontract Agreement.  Plaintiffs argue that the Ordering Provision in § 32 of Appendix A to the Subcontract, which gives priority to Appendix C provisions over Appendix A provisions in the event of conflict, makes clear that the forum selection clause in Appendix C governs.  The provision in Appendix C is plainly a mandatory forum selection clause directing that any disputes be filed in New Jersey courts.  Oney Decl., Ex. A (Subcontract Agreement), App'x C, § 5.13 ("and *shall* be filed in the appropriate Division of the New Jersey Superior Court") (emphasis added). The provision in Appendix A, on the other hand, points to Louisiana courts.  However, that provision simply states that "[b]oth parties hereby *consent* to personal jurisdiction and venue in the courts of Orleans Parish, or a federal court located in Louisiana . . . ." *Id.*, Ex. A, App'x A (emphasis added).   The Court finds such language permissive, not mandatory.  *See Cancer Genetics*, 2007 WL 4365328, at *4 ("A permissive forum selection clause refers to consent to jurisdiction in a particular forum, but does not preclude litigation in other fora.").  Thus, the

question is whether a mandatory provision in favor of New Jersey applies, or a permissive provision in favor of Louisiana applies. Because the Court reaches the same decision regardless of the answer to this question, it need not resolve which provision controls at this time.

Even assuming a permissive clause permitting venue in Louisiana, the Court finds that the factors overall weigh against transfer. HGI argues that, in light of the Louisiana forum selection clause, this Court should give no weight to the private interest factors and convenience of the parties as that preference is expressed in the forum selection clause. *See* Def.'s Reply at 10. Although the Court disagrees with HGI as to the mandatory nature of that clause (even putting aside whether that clause governs), for purposes of this analysis, the Court focuses only on the public interest factors.

Plaintiffs' claims are for breach of contract among other claims. The nature of the contract at issue was not simply a private business matter. Instead, the contract related to a prime contract with New Jersey state dealing with Superstorm Sandy services. Plaintiffs' claims do not solely arise from how HGI distributed the state's settlement funds as Defendant claims (events which Plaintiffs assert involved New Jersey meetings). Plaintiffs and HGI dispute the total amount owed under the Subcontract as well as the amount due in light of the funds HGI received in the settlement with the state. New Jersey has a strong interest in how subcontractors for its *state* contracts are treated and paid. It has an even greater interest when those contracts involve services for events affecting a large number of New Jersey residents. This is presumably why there are mandatory forum selection clauses in favor of New Jersey in all of the contracts between New Jersey and HGI (one of which is incorporated into the Subcontract) for any dispute "arising from or related [to]"

the contracts.  Additionally, even though Defendant attempts to distance Plaintiffs from the state

of New Jersey, the first sentence of the Subcontract states:

> This agreement ("Agreement") dated the 23 day of August 2013 is between veteran Call Center LLC **with principal offices at 53 Knightsbridge Road, Suite 201, Piscataway, NJ 08854** (referred to as "SUBCONTRACTOR"), and Hammerman & Gainer, Inc. (HGI) ("PRIME"), whose address is 1010 Common Street, Suite 2600, New Orleans, LA 70112.

Oney Decl., Ex. A (emphasis added).  New Jersey has an interest in New Jersey businesses

generally, and an even greater interest when those businesses are providing services paid for by

the state for the benefit of New Jersey residents recovering from a catastrophe affecting the state.

And, in this case, HGI maintained offices in New Jersey, agreed that the funds from the state would

be deposited in a New Jersey escrow account, and its representatives conducted meetings in New

Jersey on the issue of payments both with the state and with Veteran Call Center.  Defendant's

argument that Louisiana has an interest in contracts involving its citizens does not outweigh New

Jersey's interest in the matter.

Furthermore, although Defendants argue that Court congestion is another public interest

factor that weighs in favor of transfer, the issue of congestion does not apply to this particular

Court.  In fact, this Opinion is being issued one week after the return date on the motion.  And,

while Defendant implies Plaintiffs' motion is without merit, Plaintiffs have already filed a motion

for summary judgment in this matter (which is adjourned but currently pending before this Court).

*See* ECF No. 18.   Per this Court's prior order, briefing on that motion will proceed in short order

with a new return date of January 19, 2016.

If the Court were to consider the private factors, those weigh heavily against transfer for

all of the reasons identified herein.

For these reasons, the Court finds that transfer is not appropriate in the circumstances of this case.

## IV.   CONCLUSION

In light of the foregoing, Defendant's motion is denied. An appropriate Order accompanies this Opinion.

DATED: December _15_, 2015

_____

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE