NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VETERAN CALL CENTER, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HAMMERMAN & GAINER, INC., <br><br> Defendant. | Civil Action No.: 15-6257 (JLL) (JAD) <br><br> **OPINION** |

**LINARES**, District Judge.

Presently before the Court are cross-motions for summary judgment filed by Plaintiffs Veteran Call Center, LLC and Veteran Contact Center, Inc. (collectively "VCC") and Defendant Hammerman & Gainer, Inc. ("HGI"). (ECF Nos. 13, 22.) The Court has considered the submissions of the parties and heard oral argument on March 24, 2016. For the reasons set forth below, the Court grants VCC's motion (ECF No. 13) and denies HGI's motion (ECF No. 22).

**I.     BACKGROUND**

Plaintiff Veteran Call Center, LLC ("Veteran Call Center") is a Virginia company with its principal place of business in Piscataway, New Jersey. (Compl. ¶ 1.) Plaintiff Veteran Contact Center, Inc. ("Veteran Contact Center") is a New Jersey corporation with its principal place of business in Piscataway, New Jersey. (*Id.* ¶ 2.) Plaintiffs are "a Certified Service Disabled Veteran Enterprise and Minority Business Enterprise that services commercial customers and Government agencies by employing physically disabled Veterans as call center managers." (*Id.* ¶ 7.) HGI is a Louisiana corporation with its principal place of business in New Orleans, Louisiana. (*Id.* ¶ 3.)

HGI "is a risk services and claims management company that provides property and casualty claims administration services nationwide." (*Id.* ¶ 9.)

On or about May 8, 2013, HGI entered into a three-year, $68 million contract (the "Prime Contract") with the State of New Jersey, Department of Treasury, Division of Purchase and Property (the "State") to administer the State's Superstorm Sandy Housing Incentive Program ("SSHIP"), a $1.6 billion program in which HGI would be responsible for, among other things, development of an intake and application process, eligibility determination, loan closings, disbursing of funds, monitoring and compliance and close out of the program. (*Id.* ¶ 11; ECF No. 13-1, VCC 56.1 SMF ¶ 1; ECF No. 22-2, HGI Responsive 56.1 SMF ¶ 1.) In order to satisfy its responsibility under the Prime Contract with New Jersey, HGI was required to set up a call center "to receive calls from New Jersey homeowners victimized by Superstorm Sandy in order to assist them with the application process for the Sandy housing programs." (Compl. ¶¶ 13-14.) HGI chose to fulfill its call center obligation by subcontracting the call center operations to a third party. (*Id.* ¶ 15.)

On August 23, 2013, Plaintiff Veteran Call Center contracted with Defendant HGI "to operate and manage the [New Jersey] Call Center (the 'Subcontract')." (ECF No. 13-3, Magnelli Decl., Ex. C (the "Subcontract"); VCC 56.1 SMF ¶ 2; HGI Responsive 56.1 SMF ¶ 2.)

The Subcontract contains the following payment provision:

> SUBCONTRACTOR shall be paid within fifteen (15) days of PRIME's receipt of payment from the Client for SUBCONTRACTOR'S services. Each invoice shall contain all invoice data required in the prime contract as it relates to the Services. No payment will be made unless PRIME receives payment for SUBCONTRACTOR'S services from Client.

2

*Id.* § 8.5. The parties dispute whether, pursuant to the above provision, each subcontractor was "put on notice that it would only be paid if HGI received payment from the State tied specifically to the subcontractor's services." (ECF No. 22-2, HGI 56.1 CSMF ¶ 4; ECF No. 23-2, VCC Reply to CSMF ¶ 4.)

In the Fall of 2013, the State stopped making payments under the Prime Contract altogether, and on December 6, 2013, HGI and the State negotiated a termination agreement whereby the Prime Contract was terminated by mutual agreement. (ECF No. 22-3, Oney Decl., Ex. A ("Termination Agreement").) The Termination Agreement provided that HGI would continue to perform until January 6, 2014, with an option for the State to extend that term by an additional two weeks, during which period HGI would continue to perform services required under the Prime Contract and "transition services" related to the winding down of the Prime Contract in order to provide an orderly transition of services to one or more successor contractor(s) or State employees. (*Id.*)

The Termination Agreement also provided for: (a) two lump sum payments, one for $7 million and one for $2 million, which funds remained subject to reconciliation or further adjustment by the State and were not finally resolved until HGI and the State reached a settlement of arbitration proceedings in May 2015; and (b) an agreement by the parties to submit to arbitration for all remaining disputes arising out of, or relating to, the Prime Contract. (*Id.* §§ 4, 7.)

HGI contends that the State declined to perform an invoice-by-invoice review, such that the $9 million paid pursuant to the Termination Agreement was not allocated to any particular invoices or services. (HGI 56.1 CSMF ¶ 16.) VCC claims that the State identified 21 invoices that the $9 million payment was intended to cover. (VCC Reply to CSMF ¶ 16.) HGI elected to

3

make distributions from the $9 million payment to itself and its subcontractors, but no distribution was made to VCC out of the $9 million interim payment. (*Id.* ¶ 17, 18; HGI 56.1 CSMF ¶¶ 17, 18.) Because the $9 million interim termination payment was subject to a final reconciliation and possible claw back, HGI did not distribute the entire $9 million. (*Id.* ¶ 19.)

In February 2014, HGI commenced an arbitration to recover the remainder of monies ($21,762,815) owed to it and its subcontractors, including Veteran Call Center, for services performed pursuant to the Prime contract. (VCC 56.1 SMF ¶ 5; HGI Responsive 56.1 SMF ¶ 5.) The majority of the unpaid invoices were for work performed by HGI's subcontractors, including Veteran Call Center. (*Id.* ¶ 6.) In response to HGI's demand for payment, the State presented counterclaims seeking damages in an amount in excess of both the $9 million interim termination payment and the outstanding amounts still owed to HGI and its subcontractors. (HGI 56.1 CSMF ¶ 21; VCC Reply to CSMF ¶ 21.) HGI contends that it expended over $2 million in legal fees and costs litigating and negotiating with the State. (*Id.* ¶ 22.)

On May 7, 2015, HGI and the State of New Jersey entered into a Settlement Agreement, whereby the State agreed not to pursue its counterclaims and make a final lump sum payment of $7,625,000 for the outstanding balance. (*Id.* ¶ 23; Magnelli Decl., Ex. A ("Settlement Agreement").) Under the terms of the Settlement Agreement:

> 1.1. As full payment for all invoices and work performed by HGI and any of HGI's subcontractors, whether submitted or retained, allowed or disallowed, that in any way could be construed as an obligation of the State to HGI under the terms of the Contract, within seven (7) days after receipt of a fully executed copy of this Settlement Agreement, the DCA shall pay HGI the sum of $7,625,000.00 ("Settlement Payment"), such settlement to include "other direct costs" and travel costs, to be held in escrow by McCarter & English, LLP, as escrow agent . . .

4

\* \* \*

> 1.4. HGI represents and warrants that the subcontractors referenced . . . consist of the following . . .
>
> Veteran Call Center, LLC

(*Id.*) The State of New Jersey paid HGI the Settlement Payment by wiring the funds to an escrow account maintained by McCarter & English. (VCC 56.1 SMF ¶ 9; HGI Responsive 56.1 SMF ¶ 9.) The parties dispute whether the payment of the $7.625 million represented "payment in full." (*Id.* ¶¶ 10, 11.)

HGI determined to pay the subcontractors pro-rata from the funds received from New Jersey. (*Id.* ¶¶ 12, 13.) According to HGI, Veteran Call Center's share of the Settlement Payment is $151,144.00, which is 26.7% of $566,083.00. (*Id.* ¶¶ 14, 15.)[1] Veteran Call Center rejected the amount offered by HGI to settle its outstanding invoices, and instead has insisted on full payment for all of its outstanding invoices for labor services. (HGI 56.1 CSMF ¶ 30; VCC Reply to CSMF ¶ 30.) Thus, Veteran Call Center has not been paid its outstanding invoices even after payment to HGI by New Jersey. (*See* Compl. ¶¶ 34, 36, 38.)

As a result of the non-payment of amounts they allege are due and owing, VCC filed suit in this Court against HGI on August 18, 2015, alleging breach of contract (Count 1), account stated / book account (Count 2), *quantum meruit* (Count 3), unjust enrichment (Count 4), breach of the implied covenant of good faith and fair dealing (Count 5), promissory estoppel (Count 6), conversion (Count 7), and constructive trust (Count 8). (ECF No. 1.)

In lieu of an answer, HGI filed a motion to dismiss for improper venue, or in the alternative

---

[1] HGI admits that there exists $566,083 in unpaid invoices owed to Veteran Call Center: "HGI's records reflect a total amount invoiced by Veteran Call Center that remains unpaid of $566,083.00." (HGI Responsive 56.1 SMF ¶ 15.)

5

to transfer, arguing that this action should have been filed in Louisiana. (ECF No. 10.) In addition to opposing the venue motion (ECF No. 12), VCC filed a cross-motion for partial summary judgment, requesting that the Court enter an Order that HGI is liable to VCC for at least the amount of $566,083.00. (ECF No. 13.)

On December 15, 2015, the Court issued an Opinion and Order denying the motion to dismiss for improper venue, finding that the case was properly filed in New Jersey. (ECF Nos. 20, 21.) VCC's cross-motion for partial summary judgment was refiled as a new motion. (*See* ECF No. 18.) On January 4, 2016, HGI filed a cross-motion for partial summary judgment. (ECF No. 22.) VCC filed a brief in further support of its motion and in opposition to HGI's cross-motion (ECF No. 23), and HGI (with leave of Court) filed a reply brief in further support of its cross-motion. (ECF No. 26.)

## II.   LEGAL STANDARD

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex Corp.*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

A court "can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted is subject to only one reasonable interpretation." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 164–65 (3d Cir. 2001) (internal quotation marks omitted). "Where . . . a contract is unambiguous, it is appropriate for the court to determine its meaning as a matter of law at the summary judgment stage." *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1073 (3d Cir. 1996). If a contract can reasonably be interpreted in two different ways, then a contracting party is not entitled to summary judgment in a breach of contract action. *American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 581 (3d Cir. 1995).

The standard is essentially the same under Louisiana law:

> Interpretation of a contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full

7

> performance of the obligations flowing therefrom. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit.

*Sanders v. Ashland Oil, Inc.*, 96-1751 (La. App. 1 Cir. 6/20/97), 696 So. 2d 1031, 1036, writ denied, 97-1911 (La. 10/31/97), 703 So. 2d 29 (internal citations omitted); *see also Olympia Minerals, LLC v. HS Res., Inc.*, 2013-2637 (La. 10/15/14), 171 So. 3d 878, 891 ("[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.") (quoting *Sims v. Mulhearn Funeral Home, Inc.*, 07–0054, p. 11 (La. 5/22/07), 956 So.2d 583, 590).

### III.  ANALYSIS[2]

HGI presents two general arguments in support of its claim that VCC is not entitled to the full value of the invoices submitted by VCC. First, HGI argues that the Subcontract contains a "pay-if-paid" provision, meaning that each subcontractor was "put on notice that it would only be paid if HGI received payment from the State tied specifically to the subcontractor's services." (HGI 56.1 CSMF ¶ 4; HGI Mov. Br. at 13-20.) HGI argues that because the Settlement Payment did not reflect any payment made against any specific invoices, HGI could not determine which

---

[2] Although the first issue briefed by HGI is whether New Jersey or Louisiana law applies, the parties conceded at oral argument that the analysis is essentially the same under either, and that the main issue is whether the express terms of the Subcontract were satisfied. (*See* ECF No. 30, Mar. 24, 2016 Tr. at 5:13-18, 11:23-25.) For purposes of this motion only, the Court finds that Louisiana law applies, as HGI contends.

of VCC's invoices were paid by the State as part of the settlement. Second, HGI argues that because HGI settled its claim of over $21 million with the State for a Settlement Payment of $7.625 million, VCC is not entitled to its full amount. HGI states that it relied on principles of good faith and fair dealing in distributing the balance of the Settlement Payment on a pro-rata basis to all subcontractors. (*Id.*) HGI argues that pursuant to the "pay-if-paid" provision, the parties agreed to shift the risk of nonpayment from HGI to VCC and that VCC should bear its share of the State's failure to pay by accepting only a pro-rata portion of the recovery. (*Id.*)

VCC first argues that the Subcontract contains a "pay-when-paid" clause (as opposed to "pay-if-paid") and that nothing in the Subcontract itself evidences the parties' intention to shift the risk of nonpayment to VCC. (ECF No. 13-2 ("VCC Mov. Br.") at 3-7; VCC Opp. Br. at 13-19.) VCC argues that intent to shift the risk of nonpayment must be clear and unequivocal, and that merely utilizing the word "unless" is insufficient to demonstrate that intent. (*Id.*) Second, and more fundamentally, VCC argues that it does not matter whether the Subcontract contains a "pay-if-paid" or "pay-when-paid" provision because HGI has been paid in full by the State for work performed by HGI's subcontractors, including Veteran Call Center. (VCC Opp. Br. at 8-12.) VCC contends that the implied covenant of good faith and fair dealing prevents HGI from unilaterally altering the payment amounts and that the plain language of the Subcontract (in particular the absence of a provision allowing HGI to proportionally reduce the amount owed to Veteran Call Center) demonstrates that Veteran Call Center is entitled to full payment of at least $566,000.

The Court agrees with VCC. Even assuming that the provision at issue is a "pay-if-paid" provision as HGI contends,[3] the terms of the Subcontract have been satisfied. The Subcontract

---

[3] The Court is not finding that the provision is in fact "pay-if-paid." Rather, for argument's sake only, it is assuming it is "pay-if-paid" to demonstrate that the elements have nevertheless been satisfied. To be clear, the Court is reserving

9

states in relevant part: "[Veteran Call Center] shall be paid within fifteen (15) days of [HGI]'s receipt of payment from the [State] for [Veteran Call Center's] services. . . . No payment will be made unless [HGI] receives payment for [Veteran Call Center's] services from [the State]." (Subcontract § 8.5.) Even if this alleged "pay-if-paid" provision absolves HGI of any obligation to make payment to Veteran Call Center unless HGI receives payment from the State for Veteran Call Center's services, it is clear to the Court that HGI in fact received payment for Veteran Call Center's services from the State. By its express terms, the Settlement Payment was "*full payment for all invoices and work* performed by HGI and any of HGI's subcontractors" *including Veteran Call Center*. (Settlement Agreement §§ 1.1, 1.4 (emphasis added).)

HGI's suggested interpretation is not supported by the plain language of the Subcontract, which, again, merely states that "[n]o payment will be made unless [HGI] receives payment for [Veteran Call Center's] services from [the State]." To find in its favor, HGI asks the Court to read into this provision additional requirements, which was illuminated during oral argument during questioning of HGI's counsel:

> THE COURT: But aren't you acknowledging by saying we will pay [Veteran Call Center] 23 percent or a pro-rate share, acknowledging that even the if-paid provision has been met? . . . aren't you acknowledging that even if I interpret [section 8.5 of the Subcontract] to be an if-paid provision, that that provision has been met, because you are agreeing that it should be paid. You are just saying [HGI] should be paying less.
>
> MR. MINTZ: Our position is that the "pay-if-paid" provision means we don't – that [Veteran Call Center] [is] not entitled to be paid, that our obligation to pay them isn't triggered unless –
>
> THE COURT: Right. You are saying they are not entitled to be paid at all.

---

decision on whether the provision is "pay-if-paid" or "pay-when-paid."

10

> MR. MINTZ: Well, I think that would be unfair.
>
> \* \* \*
>
> THE COURT: Let's assume for the sake of argument that I were to read this as an intent by [Veteran Call Center] to enter into a contract that said, I am only going to get paid, if you get paid. In light of the facts in the case, where you did get paid, albeit not all of the money, but you got paid some of the money, if I interpret it as an if-paid provision, what is the difference? You are saying for you to win under the if-paid theory, I would have to say they are not entitled to any money because the State didn't designate what that money was for, right, and that therefore they are not entitled to any money.
>
> MR. MINTZ: No. I don't think that – I won't agree with that completely, your Honor. . . . We have to be specifically paid for [Veteran Call Center's] services. That is what they agreed to. And I think while theoretically since we weren't paid specifically for their services, you could argue that we never owed them any money, but I think certainly from an equitable standpoint, it would be completely unfair to then say we are not going to pay you anything, and we never contemplated that for a second.

(Tr. 15:23-16:17; 19:24-21:1.)

      Fatal to HGI's position is that language relating to specifically identified invoices, or HGI's ability to pro-rate amounts owed to subcontractors if full payment is not received, is glaringly absent from section 8.5 of the Subcontract. Rather, all that is required under the express terms of the Subcontract is receipt by HGI of "payment for [Veteran Call Center's] services from [the State]." The Court finds that plain meaning of the provision is clear and explicit, is subject to only one reasonable interpretation, and leads to no absurd consequences. *See Sanders*, 696 So. 2d at 1036. Again, because HGI received "full payment" for work performed by HGI's subcontractors including Veteran Call Center (*see* Settlement Agreement §§ 1.1, 1.4), the terms of the Subcontract have been satisfied. Accordingly, Veteran Call Center is entitled to payment, and in the absence

11

of further language permitting HGI to pro-rate the amount owed, the Court finds that Veteran Call Center is entitled to summary judgment.

The parties agree that invoices from Veteran Call Center in the amount of $566,083.00 remain unpaid *(see* VCC 56.1 SMF ¶ 15; HGI Responsive 56.1 SMF ¶ 15), and VCC's motion seeks an Order that HGI is liable to VCC for "at least" the amount of $566,083.00. (*See* ECF No. 13.) At oral argument, however, counsel for VCC acknowledged that there is a material fact dispute as to the precise amount owed:

> MR. MAGNELLI: . . . There is a dispute over the entire amount owed. VCC feels that they are entitled to approximately over $600,000. However, there is no dispute that at least $566,000 is owed because that 26 percentile, $566,000 would be what a hundred percent is, so at least that first $566,000 is not disputed.
>
> THE COURT: Even if you won, there would still be an issue of fact as to the amount of damages.
>
> MR. MAGNELLI: If we won, the client will sit back and make a decision of whether or not it is worth continuing to fight for however much money.

(Tr. 10:8-18.) Accordingly, the precise amount of damages remains open and Veteran Call Center is left to their proofs on the issue.[4]

---

[4] In their brief in opposition to HGI's cross-motion for summary judgment, VCC raised for the first time the issue of whether HGI is liable to Veteran Contact Center in addition to Veteran Call Center. (*See* ECF No. 23 at 20-21.) This issue was not alleged in the Complaint and therefore is not properly before the Court. *See Bey v. Daimler Chrysler Servs. of N. Am.*, No. 04–6186, 2006 WL 361385, at *11 (D.N.J. Feb.15, 2006) ("[C]laims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment"). Furthermore, the Subcontract only lists Veteran Call Center as a party, and whether Veteran Contact Center could be considered a third-party beneficiary is clearly a disputed fact issue. Accordingly, to the extent that VCC properly moved for summary judgment on this point, such motion is denied.

## IV. CONCLUSION

For the reasons above, VCC's motion is granted and HGI's motion is denied. An appropriate Order accompanies this Opinion.

DATED: April 19, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

13